

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-2004

# Jiang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3525

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Jiang v. Atty Gen USA" (2004). *2004 Decisions.* Paper 420.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/420

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3525

SHUI XING JIANG
Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES
Respondent

On Petition for Review of an Order of
the Board of Immigration Appeals
(No. A70 908 967)

Submitted pursuant to Third Circuit LAR 34.1(a)
September 18, 2003

Before: MCKEE, SMITH, Circuit Judges and SCHILLER[*], District Judge

(Opinion filed: August 4, 2004)

OPINION

McKee, *Circuit Judge.*

Shui Xing Jiang asks us to reverse a Board of Immigration Appeals'

affirmance of the Immigration Judge's decision denying Jiang relief from removal under

the Immigration and Nationality Act.  For the reasons that follow, we will affirm.

_____

[*]Honorable Berle M. Schiller, United States District Judge, United States District Court
for the Eastern District of Pennsylvania sat by designation.

Inasmuch as we write only for the parties who are familiar with the factual and procedural history of this case, we need not reiterate the facts except insofar as they are helpful to our brief discussion. Jiang argues that the Immigration Judge erred in finding his testimony lacked credibility and in concluding that he was not a "refugee" within the meaning of the Immigration and Nationality Act. "Refugee" is defined by statute as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Section 601 of IIRIRA amended the above definition of refugee as follows:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy would undergo involuntary sterilization, or who has been prosecuted for . . . resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well-founded fear of persecution on account of political opinion.

Jiang claims that the record establishes a well founded fear of persecution if he is forced

-2-

to return to China because of his past opposition to China's coercive family planning policy and his past attempts to prevent his wife from undergoing forced sterilization.

At the outset we note that, even if Jiang's testimony is accepted as true, we would affirm the denial of relief because Jiang's wife has already been forced to undergo involuntary sterilization and, according to Jiang's own testimony, he does not now fear returning to China because of any past opposition to China's family planning policy, but because he left the country illegally. Jiang argues that since he only left China because of fears arising from his opposition to China's family planning policy, concerns about prosecution for leaving illegally should not negate "refugee" status. Petitioner's Br. at 13 (citing section 601 of IIRIRA). However, we do not read Jiang's testimony as stating that he fears return because he will be arrested for his past resistance to China's family control policy. Rather, he argues that he will be prosecuted because he left China illegally. On this record, we are reluctant to stretch that concern as far as finding of "refugee" would require INA § 101(a)(42)N, 8 USC § 1101(a)(42)(A). Moreover, we need not resolve this fine distinction now, because the Immigration Judge's credibility determination is supported by the record.

The Immigration Judge expressed some skepticism about Jiang's testimony that he had been a fisherman for most of his life. This testimony was important because Jiang's occupation as a fisherman explained why he was not listed in the Family Household Registry. That Registry listed Jiang's wife, not Jiang, as head of the household. A.R.

-3-

126, 209. Jiang testified that he was working on a boat at the time his wife gave birth to his second child. When asked how long he worked on a fishing boat he replied, "I don't remember. I don't recall." A.R. 101. Although, we understand that it is possible that a fisherman in a rural village may not be able to recall with clarity how long he worked as a fisherman, we nevertheless believe that the record supports the Immigration Judge's skepticism. Jiang testified that he began working as a fisherman at the age of 22, nine years after he left school. He later stated that he stopped fishing at the age of 34. A.R. 102. Jiang's apparent ability to recall with precision how old he was when he began working as a fisherman and his age when he stopped working as a fisherman is inconsistent with his testimony that he could not recall how long he had worked as a fisherman, and raises doubts about his ability to explain his absence from the Household Registry.

In addition, Jiang testified that authorities in China had to wait nine years to sterilize his wife because she was bleeding during the intervening period and the sterilization procedure could not be performed. That procedure was finally performed five or six years after Jiang left China. A.R. 51. The Immigration Judge found Jiang's attempt to explain why the authorities waited nine years to sterilize his wife less then convincing, and that skeptisicism is supported by the record.

The Immigration Judge also relied heavily upon Jiang's demeanor to conclude that Jiang was not being truthful when he testified during the immigration proceeding. The

-4-

Judge rejected Jiang's excuse of having a cold. The Immigration Judge did not see anything that would have suggested that Jiang was actually suffering from a cold. A.R. 49-50. Thus, although Jiang labels the Immigration Judge's findings as "wild speculation", Petitioner's Br. at 17-18, the "record considered as a whole" supports the Immigration Judge's conclusion that the evidence was not credible. *See Elias-Zacarais*, 502 U.S. at 481.

Jiang also argues that the BIA erred in summarily affirming the Immigration Judge's decision using its recently adopted summary procedures. Jiang argues both that the circumstances surrounding a refugee's request for asylum prohibit summary affirmances, Petitioner's Brief at 20, and that this procedure violates his due process rights. Petitioner's Br. at 24-30. We rejected this precise argument in *Dia v. Ashcroft*, 353 F.3d 228 (3d. Cir. 2003).

Accordingly, for the reasons set forth above, the Order of the Board of Immigration Appeals dated August 15, 2002 affirming the decision of the Immigration Judge will be affirmed.